# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1063

_____

John Hamm; Linda Conolly; Elaine    *
Decembrino; Kelly Bohm,    *
   *
       Appellants,    *
   *
     v.    *
   *    Appeal from the United States
Rhone-Poulenc Rorer Pharmaceuticals,    *    District Court for the
Inc., a Delaware corporation; Robert A.    *    District of Minnesota
Becker, Inc., a New York corporation;    *
Dr. Alexander Graham Turpie; Does,    *
1 through 100, inclusive,    *
   *
       Appellees.    *

_____

Submitted: February 11, 1999

Filed: August 11, 1999

_____

Before McMILLIAN, JOHN R. GIBSON and MURPHY, Circuit Judges.

_____

McMILLIAN, Circuit Judge.


Appellants are present and former employees of defendant Rhone-Poulenc Rorer
Pharmaceuticals, Inc. (RPR), a pharmaceutical company, who are appealing from a

final order entered in the United States District Court[1] for the District of Minnesota, granting summary judgment in favor of RPR (and the other defendants) and dismissing their civil Racketeer Influenced and Corrupt Organizations Act (RICO) claims for failure to state a claim and their pendent state claims for lack of subject matter jurisdiction. Hamm v. Rhone-Poulenc Rorer Pharmaceuticals, Inc., Civil No. 97-1329 (DSD/JMM) (D. Minn. Nov. 25, 1997) (district court order adopting report and recommendation of magistrate judge).[2] For reversal, appellants argue that the district court erred in (1) converting RPR's Rule 12(b)(6) motion to dismiss into a motion for summary judgment and denying their motion to voluntarily dismiss the action without prejudice and (2) dismissing their civil RICO claims for lack of standing. For the reasons discussed below, we affirm the judgment of the district court.

## JURISDICTION

The district court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (RICO, 18 U.S.C. §§ 1961-1968), 1367(a) (supplemental jurisdiction over state law claims). This court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. The district court entered its judgment on November 25, 1997, and appellants timely filed a notice of appeal on December 24, 1997, pursuant to Fed. R. App. P. 4(a).

## BACKGROUND FACTS

Appellants filed this class action against RPR, their employer and a manufacturer of prescription and over-the-counter drugs, and defendants Robert A. Becker, Inc. (Becker), an advertising agency that also operated under the fictional name Genecom,

---

[1] The Honorable David. S. Doty, United States District Judge for the District of Minnesota.

[2] The Honorable John M. Mason, United States Magistrate Judge for the District of Minnesota.

Dr. Alexander Turpie, a physician and a Canadian citizen, and other defendants, asserting civil RICO claims and related state law claims. In their second amended complaint, appellants alleged that RPR constructively discharged, defamed or retaliated against them because they criticized or refused to participate in RPR's alleged violations of federal law. Appellants alleged that RPR marketed four pharmaceutical products in an unlawful manner by promoting off-label uses.[3] Once the Food and Drug Administration (FDA) approves a drug, physicians may prescribe the drug for use or in a manner not indicated on its FDA-approved label. However, manufacturers are prohibited from promoting such off-label uses.

Appellants alleged that RPR conspired with Becker, Turpie and unnamed physicians and others to illegally promote the use of RPR products prior to FDA approval or for off-label uses with the intent to defraud hospital administrators, physicians and other medical personnel into prescribing or purchasing RPR products, through the use of the mail, wire communications and facilities of interstate commerce, and that appellants were "unwilling pawns" in the fraudulent scheme. More specifically, appellants alleged that RPR improperly marketed four of its pharmaceutical products by promoting those products for off-label use and by compensating physicians for prescribing those products, in violation of applicable federal law. Appellants alleged that RPR carried out its fraudulent scheme by providing information about off-label use of its products to RPR sales representatives, encouraging RPR sales representatives to solicit physicians who would prescribe RPR products for off-label use, arranging speaking events for physicians who prescribed RPR products for off-label use, setting sales quotas that implicitly included off-label sales of RPR products, using Genecom to pay physicians to serve as speakers, and paying physicians to promote off-label uses of RPR products. Appellants alleged that,

---

[3]"An 'off-label' use of an approved product is a specific use for which that product has not been approved by the FDA." In re Kessler, 100 F.3d 1015, 1015 n.1 (1997).

when they reported these unlawful off-label promotional activities to RPR legal officials, those officials told them to rewrite promotional event payment requests and to destroy evidence of illegal promotions. According to appellants, RPR conducted these activities through the use of the mail, wire communications and facilities of interstate commerce.

Appellants also alleged that defendants conducted or participated in a pattern of racketeering activity, that is, obtaining money from illegal promotions of RPR products by Genecom. Appellants alleged that defendants sent promotional materials and obtained or paid money through the mail (mail fraud, 18 U.S.C. § 1341), transmitted promotional materials and made false representations by interstate telephonic communications (wire fraud, 18 U.S.C. § 1343), and used the facilities of interstate commerce with the intent to distribute the proceeds gained from illegal kickbacks and payments made to influence the promotion and use of RPR products (18 U.S.C. § 1952).

Appellants claimed no injury or damage to themselves as a result of any of RPR's allegedly illegal promotional activities; however, they alleged that the intent and purpose of these promotional activities was to defraud hospital administrators, physicians and other medical personnel by persuading them to prescribe or purchase RPR's products. Appellants also claimed personal injury because they either criticized or refused to participate in RPR's fraudulent scheme and as a result were terminated, denied promotion and compensation, lost stock options, and defamed.

Before filing an answer, RPR filed a Rule 12(b)(6) motion to dismiss the first amended complaint on the ground that appellants did not have standing to assert civil RICO claims and failed to properly plead racketeering activity. (Turpie also filed a motion to dismiss.) The parties agreed that all motions to dismiss applied to the second amended complaint and that all rulings would apply to all party defendants. The district court referred the motion to dismiss to a magistrate judge for a report and

recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). During oral arguments on the motion to dismiss, the magistrate judge questioned counsel for appellants about the effect, if any, on their civil RICO claims of Bowman v. Western Auto Supply Co., 985 F.2d 383, 385-86 (8th Cir.) (Bowman), cert. denied, 508 U.S. 957 (1993), in which this court held that employees discharged for criticizing or refusing to participate in the employer's racketeering activity lacked standing to bring a civil RICO claim when the underlying violation is based on 18 U.S.C. § 162(a), (b) or (c). Counsel for appellants conceded that, under Bowman, appellants could not base a civil RICO claim on allegations of wrongful discharge, denial of promotion, loss of compensation or benefits, harassment or intimidation, and retaliation. That left only appellants' defamation or damage to business reputation claim. Counsel for appellants then argued that appellants had been defamed not because they had criticized or refused to participate in the illegal promotion of off-label uses and kickbacks, but instead because they had actually participated in the illegal scheme. This was the opposite of what was alleged in the second amended complaint.

The magistrate judge recommended that the civil RICO claims be dismissed with prejudice for failure to state a claim and that the state law claims be dismissed without prejudice for lack of subject matter jurisdiction. The magistrate judge noted that appellants did not claim that RPR's fraudulent scheme was directed or targeted at them (the employees); rather, RPR's fraudulent scheme was directed at hospital administrators, physicians and other medical personnel who prescribed and purchased RPR products. The magistrate judge considered the civil RICO claims as pleaded and as supplemented by counsel for appellants during oral argument and concluded that, under either theory, appellants lacked standing to bring civil RICO claims. The magistrate judge also found that any reputational injury was not the direct result of the RICO predicate acts (mail fraud, wire fraud, use of facilities of interstate commerce) and there was no causal link between the injury and the RICO predicate acts. See Report and Recommendation, slip op. at 10-21. That finding meant that appellants also lacked standing to bring a civil RICO conspiracy claim in violation of 18 U.S.C.

-5-

§ 162(d) because <u>Bowman</u> limited such standing to individuals who have been harmed by a RICO predicate act committed in furtherance of a conspiracy to violate RICO. <u>See</u> 985 F.2d at 388.

The magistrate judge also found that appellants lacked standing to bring a civil RICO claim because reputation is not "business or property" and thus an injury to one's reputation is not an injury for purposes of RICO. <u>See</u> Report and Recommendation, slip op. at 19, <u>citing</u> 18 U.S.C. § 1964(c). The magistrate judge also found that appellants lacked standing to bring a civil RICO claim because RICO was not intended to permit individuals who actually participated in a fraudulent scheme in violation of RICO to then seek treble damages under RICO. <u>See id.</u> at 20.

The magistrate judge also recommended that appellants' civil RICO claims should be dismissed with prejudice because they had already had three opportunities to plead facially valid claims and it would be futile for appellants to amend because, as a matter of law, appellants cannot allege any set of facts under which they would have standing to assert civil RICO claims. <u>See id.</u> at 23-24. The magistrate judge also recommended declining to exercise supplemental jurisdiction over appellants' state law claims, <u>see id.</u> at 25, and dismissing those claims without prejudice.

Appellants filed objections to the report and recommendation and a notice of voluntary dismissal and a motion for dismissal without prejudice. RPR moved to strike the notice of voluntary dismissal and opposed the motion for dismissal without prejudice. The district court reviewed the case de novo and adopted the recommendation of the magistrate judge but converted the Rule 12(b)(6) motion to dismiss into a motion for summary judgment because, in its opinion, the magistrate judge had considered matters outside the pleadings, specifically, the allegation made during oral argument that appellants had actually participated in the fraudulent scheme. <u>See</u> Order, slip op. at 5. The district court also denied the motion for voluntary dismissal and for dismissal without prejudice. The district court decided that appellants

-6-

could not voluntarily dismiss without court approval because the case was a class action, see id. at 7, and, in addition, because the Rule 12(b)(6) motion to dismiss had been converted to a motion for summary judgment. See id. at 9. Finally, the district court decided that no notice of the conversion from a Rule 12(b)(6) motion to dismiss to one for summary judgment was required because, as a matter of law, appellants lacked standing to bring either civil RICO substantive claims or civil RICO conspiracy claims. See id. at 11. This appeal followed.

## DISCUSSION

Summary Judgment Conversion

First, we consider appellants' argument that the district court erred in converting RPR's Rule 12(b)(6) motion to dismiss into a summary judgment motion. This court reviews a district court's decision to convert a Rule 12(b)(6) motion to dismiss into a motion for summary judgment for abuse of discretion. See, e.g., Kehs v. Foster, 16 F.3d 1227 (8th Cir.) (per curiam) (table), cert. denied, 511 U.S. 1107 (1994). Unquestionably, RPR filed a Rule 12(b)(6) motion to dismiss appellants' claims. Rule 12(b)(6) itself provides that when matters outside the pleadings are presented and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. Our court has interpreted the phrase "matters outside the pleadings" to include "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings." Gibb v. Scott, 958 F.2d 814, 816 (8th Cir. 1992) (citation omitted). Statements of counsel at oral argument raising new facts not alleged in the pleadings constitute "matters outside the pleadings" and, if considered by the district court, require treatment of a Rule 12(b)(6) motion to dismiss as one for summary judgment. See, e.g., Smith v. Local No. 25, Sheet Metal Workers International Ass'n, 500 F.2d 741, 744 (5th Cir. 1974) (treating a Rule 12(b)(6) dismissal order as automatically converted into summary judgment because district

court relied on materials outside the pleadings, including oral argument); <u>Judge v. Johnson Warren Lines, Inc.</u>, 205 F. Supp. 700, 702 (D. Mass. 1962) (holding that a Rule 12(b)(6) motion to dismiss should be treated as a motion for summary judgment when plaintiff's counsel relied upon facts outside the four corners of the complaint during oral argument of the motion).

Appellants argue that they did not raise matters outside the pleadings but merely reiterated matters in the pleadings. The district court found, however, that counsel for appellants made new allegations in opposition to RPR's motion to dismiss and that the magistrate judge not only considered the new allegations but also rejected them. When asked by the magistrate judge to state whether appellants' civil RICO claims were barred by the <u>Bowman</u> decision, counsel for appellants conceded that <u>Bowman</u> barred appellants' civil RICO claims for all their employment-related injuries. This concession left only their alleged injury to reputation. The magistrate judge then asked whether "in other words, it's the defamation which you say survives after the <u>Bowman</u> case?" Counsel for appellants agreed with that characterization. Appellants' second amended complaint alleged that they had been defamed and suffered damages to their business reputations because they had criticized or refused to participate in the fraudulent promotional activities. During the oral argument before the magistrate judge, however, counsel for appellants argued that appellants had been defamed because they actually participated in the fraudulent promotional activities. Counsel for appellants admitted that this actual participation argument was not included in any of their pleadings and that the omission was an oversight. The magistrate judge nonetheless gave appellants the benefit of the doubt and not only considered their claims as set forth in their pleadings (that they had refused to participate) but also their claims as supplemented during the oral argument (that they had actually participated). The magistrate judge concluded that neither allegation stated a civil RICO claim. In ruling on appellants' objections to the magistrate judge's report and recommendation, the district court found that the magistrate judge had considered the unpled theory of reputational injury and recognized that such a claim was a matter outside the pleadings

which required treating the Rule 12(b)(6) motion to dismiss as one for summary judgment.  See Order, slip op. at 5.  We hold that the district court did not abuse its discretion in converting the pending Rule 12(b)(6) motions to dismiss into ones for summary judgment.

Appellants also argue that, even if the district court properly converted RPR's Rule 12(b)(6) motion to dismiss into one for summary judgment, the district court erred in failing to give them formal notice of its intent to do so.  This argument fails because it was appellants, not RPR, who submitted the new matters.

> Constructive notice that the [district] court will consider matters outside of the complaint is sufficient.  A district court's failure to give formal notice that it will treat a motion to dismiss for failure to state a claim as a motion for summary judgment is harmless where the nonmoving party has submitted materials outside of the pleadings in support of its resistance to a motion to dismiss . . . .

Madewell v. Downs, 68 F.3d 1030, 1048 (8th Cir. 1995) (citations omitted).  In the present case, the lack of formal notice was harmless.  As noted, counsel for appellants submitted materials outside the pleadings by introducing the new allegation and new theory of defamation during oral argument on the motions (appellants were the nonmoving parties).  In addition, there was no showing that any material facts were in dispute or missing from the record because the district court in fact considered the new allegation and new theory and granted summary judgment as a matter of law for failure to state a civil RICO claim.  See Order, slip op. at 12 (holding appellants could not show a causal link between the alleged injury and RPR's alleged RICO violations and reputational injury is not injury to business or property); see also Buck v. FDIC, 75 F.3d 1285, 1288 & n.3 (8th Cir. 1996) (noting difference between standards for dismissing a complaint under Rule 12(b)(6) and for granting summary judgment are not significant where issue was decided as a matter of law, without reference to facts).  Reliance upon Court v. Hall County, 725 F.2d 1170 (8th Cir. 1984), and Layton v.

United States, 919 F.2d 1333 (8th Cir. 1990), is misplaced. In each of those cases, the moving party, not the nonmoving party, submitted matters outside the pleading, and the nonmoving party was prejudiced by not having an opportunity to respond to the moving party's new issues. See Layton v. United States, 919 F.2d at 1335; Court v. Hall County, 725 F.2d at 1171. In addition, the motion to dismiss at issue in Layton v. United States was a Rule 12(b)(1) motion which, unlike a Rule 12(b)(6) motion, is not subject to conversion into a summary judgment motion. See 919 F.2d at 1335.

Voluntary Dismissal

Appellants also argue that the district court erred in denying their motion to voluntarily dismiss pursuant to Fed. R. Civ. P. 41(a)(1)(i). Appellants argue that their right to voluntarily dismiss without prejudice cannot be cut off by a motion to dismiss but only by an answer or a motion for summary judgment. RPR filed a Rule 12(b)(6) motion to dismiss but did not file an answer or a motion for summary judgment (although, as discussed above, the district court converted that motion to dismiss into a motion for summary judgment).

Rule 41(a) identifies those instances in which the plaintiff must obtain the approval of the court before the action can be dismissed voluntarily. Once an answer or a motion for summary judgment has been filed, an action may be dismissed at the plaintiff's request only upon order of the court and upon such terms and conditions as the court deems proper. See Fed. R. Civ. P. 41(a)(1)(i). A decision whether to allow a party to voluntarily dismiss a case rests upon the sound discretion of the court. See, e.g., Bodecker v. Local Union No. P-46, 640 F.2d 182, 186 n.5 (8th Cir. 1981). In exercising that discretion, a court should consider factors such as whether the party has presented a proper explanation for its desire to dismiss, see, e.g., Paulucci v. City of Duluth, 826 F.2d 780, 783 (8th Cir. 1987); whether a dismissal would result in a waste of judicial time and effort, see, e.g., Tikkanen v. Citibank (South Dakota) N.A., 801 F. Supp. 270, 273-74 (D. Minn. 1992); and whether a dismissal will prejudice the

defendants, see, e.g., Metropolitan Federal Bank of Iowa, F.S.B. v. W.R. Grace & Co., 999 F.2d 1257, 1262 (8th Cir. 1993). Likewise, a party is not permitted to dismiss merely to escape an adverse decision nor to seek a more favorable forum. See, e.g., Holmgren v. Massey-Ferguson, Inc., 516 F.2d 856, 857 n.1 (8th Cir. 1975); International Shoe Co. v. Cool, 154 F.2d 778, 780 (8th Cir.), cert. denied, 329 U.S. 726 (1946).

The district court did not err in denying appellants' motion to voluntarily dismiss the action without prejudice. Here, appellants filed their motion for voluntary dismissal after RPR's motion for summary judgment had been filed, served, and ruled upon by the district court. Thus, appellants had no right to voluntary dismissal without a court order. A Rule 12(b)(6) motion to dismiss, which has been converted by the district court into a motion for summary judgment, is considered for purposes of Rule 41(a)(1)(i) as a motion for summary judgment. See Kurkowski v. Volcker, 819 F.2d 201, 203 (8th Cir. 1987) (holding that a converted motion to dismiss precluded voluntary dismissal under Rule 41(a)(1)(i)); Chambers v. Gesell, 120 F.R.D. 1, 2 (D.D.C. 1988) (holding that for purposes of Rule 41(a)(1), a converted Rule 12(b)(6) motion to dismiss is properly treated as a motion for summary judgment).

In addition, this case was a putative class action. The district court treated the case as a class action although no class had been certified before summary judgment was granted. Assuming for purposes of analysis that Fed. R. Civ. P. 23(e) applies to putative class actions before certification of the class by the district court, the status of the present case as a putative class action is another reason why appellants could not voluntarily dismiss without approval of the district court. Rule 41(a)(1)(i) provides in part that voluntary dismissals are "[s]ubject to the provisions of Rule 23(e)." See, e.g., Rice v. Ford Motor Co., 88 F.3d 914, 919-20 & n.8 (11th Cir. 1996).

The district court also considered appellants' motion to voluntarily dismiss under Fed. R. Civ. P. 41(a)(2). The district court found that appellants had provided no

legitimate justification for their request to dismiss and inferred that appellants were seeking to avoid an adverse decision on their civil RICO claims so that they could sue in another, arguably more favorable forum. See Order, slip op. at 13. The district court concluded that voluntary dismissal would waste the substantial efforts expended by the magistrate judge and the district court and would prejudice defendants by depriving them of a valid defense. See id. We hold that the district court did not abuse its discretion in denying appellants' motion to voluntarily dismiss under Rule 41(a)(2).

Standing to Assert Civil RICO Claims

On the merits, appellants argue that the district court erred in dismissing their civil RICO substantive and conspiracy claims for lack of standing. They argue that the damage to their business reputations caused by RPR's fraudulent scheme promoting off-label drug use, conducted through mail fraud, wire fraud and use of facilities of interstate commerce, constituted the requisite injury to their "business or property." They also argue that there was a sufficiently "direct" relationship between the injury (damage to business reputation) and the RICO predicate acts (mail fraud, wire fraud, use of facilities of interstate commerce). Appellants also argue that it was irrelevant, for purposes of RICO standing, that they were not the objects or targets of the racketeering activity. We disagree and hold the district court did not err in dismissing appellants' civil RICO substantive and conspiracy claims for lack of standing.

The civil enforcement provision of RICO provides that "[a]ny person injured in his [or her] business or property by reason of a violation of section 1962 . . . may sue therefor in any appropriate United States district court and shall recover threefold the damages . . . and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). Section 1962 has three substantive provisions (18 U.S.C. § 1962(a), (b),

(c)) and one conspiracy provision (18 U.S.C. § 1962(d)).[4] "[A RICO] plaintiff only has standing if, and can only recover to the extent that, he [or she] has been injured in his [or her] business or property by the conduct constituting the violation." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 495-96 (1985) (Sedima). Thus, the two requirements for RICO standing are (1) an injury to "business or property" (2) caused "by reason of" a RICO violation. Appellants did not satisfy either requirement.

First, in examining the statutory language "by reason of" in § 1964(c), the Supreme Court held that, to have standing under RICO, the plaintiff must have been injured by conduct which constitutes racketeering activity, that is, RICO predicate acts, and not by other conduct of the defendant. See Sedima, 473 U.S. at 496-97, citing Haroco, Inc. v. American National Bank & Trust Co., 747 F.2d 384, 398 (7th Cir. 1984), aff'd, 473 U.S. 606 (1985)). This was because "the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise." Id. at 497. The Supreme Court further refined the RICO standing requirement in Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 266-68 (1992) (Holmes), by refusing to read RICO expansively to allow all factually injured plaintiffs to recover. The Court rejected "but for" causation and instead construed RICO to require proximate cause, that is, "some direct relation

_____

[4]18 U.S.C. § 1962(a) prohibits the use or investment of income derived from a pattern of racketeering activity in any enterprise engaged in interstate commerce; § 1962(b) prohibits the acquisition of any enterprise engaged in interstate commerce through a pattern of racketeering activity; § 1962(c) prohibits participation in the conduct of an enterprise engaged in interstate commerce through a pattern of racketeering activity. Section 1962(d) makes it unlawful to conspire to violate § 1962(a), (b) or (c). A "pattern of racketeering activity" requires at least two acts of racketeering activity within 10 years, § 1961(5), and "racketeering activity" is defined in part by reference to specific unlawful acts, the majority of which are crimes, see 18 U.S.C. § 1961(1), which the Supreme Court has termed "predicate acts." See Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 495 (1985).

between the injury asserted and the injurious conduct alleged." See id. at 268 (drawing analogy to causation under § 4 of the Clayton Act, 15 U.S.C. § 15, citing Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519 (1983)). The Court required proximate cause for three reasons.

> First, the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors. Second, quite apart from problems of proving factual causation, recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries. And, finally, the need to grapple with these problems is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely.

Id. at 269 (citations omitted).

In the present case, appellants alleged that the racketeering activity was RPR's fraudulent scheme to promote off-label use of its products. That fraudulent scheme was not directed at appellants, but instead at hospitals, physicians and other medical personnel. Because appellants were not the intended targets of the alleged racketeering activity, they did not have standing to bring a civil RICO suit. See, e.g., Abrahams v. Young & Rubicam, Inc., 79 F.3d 234, 238 (2d Cir.), cert. denied, 519 U.S. 816 (1996).

In the second amended complaint, however, appellants claimed that they had been injured because they had criticized or refused to participate in the fraudulent scheme and that RPR had retaliated against them by terminating them, denying them promotions, compensation awards, stock options, and pension benefits, and defaming them (by damaging their business reputations). We considered similar allegations and rejected them as a basis for a civil RICO suit in Bowman. In that case, the plaintiff

-14-

alleged that he had discovered that his employer was double-billing its suppliers, he had refused to participate in the scheme, and he was discharged for criticizing or refusing to participate in the employer's racketeering activity. The plaintiff asserted both substantive RICO claims under 18 U.S.C. § 1962(a)-(c) and a RICO conspiracy claim under 18 U.S.C. § 1962(d). The district court denied the employer's motion to dismiss for lack of standing but certified the issue for interlocutory appeal. We accepted the interlocutory appeal and reversed, holding that, as a matter of law, the employee lacked "standing to bring a 'whistle blower' wrongful discharge suit [against the employer] under 18 U.S.C. § 1964(c) when the underlying RICO violation is based on § 1962(a), (b), or (c)." 985 F.2d at 386; see also id. at 385 (citing cases from other circuits). The court explained that "[t]he simple act of discharging an employee . . . does not constitute racketeering activity as defined in RICO, and thus does not fall within the definition of what the Supreme Court has termed 'predicate acts' under RICO." Id. at 385-86.

Appellants' claims are virtually identical to those found insufficient in Bowman. Like the employee in that case, appellants alleged that they had been injured not by their employer's racketeering activity but by the employer's retaliatory acts after they criticized or refused to participate in the racketeering activity. The injurious acts, taken as alleged, were clearly wrong; however, appellant's injuries were not proximately caused by the employer's racketeering activity.

Appellants acknowledged that under Bowman they lacked standing to assert their employment-related injuries in a civil RICO suit; however, they argued that Bowman did not bar their RICO claims for defamation, that is, for damage to their business reputations. In the second amended complaint, appellants alleged that RPR defamed them because they criticized or refused to participate in the fraudulent scheme. We hold that, under the reasoning in Bowman, appellants lacked standing to bring a civil RICO suit because the damage to their business reputations was not proximately caused by the racketeering activity. See, e.g., Abrahams v. Young & Rubicam, Inc.,

-15-

79 F.3d at 238-39 (holding plaintiff could not establish a RICO claim because he was not target of bribery scheme; targets were defendant's commercial rivals; plaintiff's reputation and business were injured by fallout from scheme's exposure); Pujol v. Shearson/ American Express, Inc., 829 F.2d 1201, 1205-06 (1st Cir. 1987) (holding plaintiff who alleged he was fired, slandered and otherwise injured because he reported and opposed employer's illegal scheme lacked standing to assert RICO claim because he was not target of any of acts pleaded as RICO predicate acts); Vitone v. Metropolitan Life Insurance Co., 954 F. Supp. 37, 38-39 (D.R.I. 1997) (holding plaintiff lacked RICO standing because damage to plaintiff's reputation and involvement in litigation were directly caused by employer's termination and post-termination conduct and not RICO predicate acts).

As noted above, during oral argument on the motions to dismiss, counsel for appellants argued that appellants' business reputations were damaged because they had actually participated in the fraudulent scheme. The class of persons who may sue under RICO is limited to those whose injuries were directly caused by RICO violations. See Holmes, 503 U.S. at 269-70. In order to show the "direct relation" required by Holmes between the injury asserted and the racketeering activity alleged, "the plaintiff must show both that he [or she] is within the class the statute sought to protect and that the harm done was one that the statute was meant to prevent." Abrahams v. Young & Rubicam, Inc., 79 F.3d at 237 & n.3 (discussing RICO standing in terms of statutory intent rather than proximate cause; question is whether the plaintiff was in the category the statute meant to protect and whether the harm that occurred was the mischief the statute sought to avoid). In the present case, appellants alleged that RPR's fraudulent scheme was directed at hospitals, physicians and other medical personnel, and not at appellants. Thus, appellants were not the intended targets of the fraudulent scheme. Their injuries were derivative and incidental, not direct. The direct injuries were those suffered by the hospitals, physicians and other medical personnel who were induced to purchase RPR products for off-label use. Although it is true that "but for" the fraudulent scheme, appellants would not have participated in the fraudulent scheme and

their business reputations would not have damaged, "but for" causation is not enough to establish RICO standing. We hold that any damage to appellants' business reputations was indirect and too remote a consequence of RPR's alleged racketeering activity directed against third-parties and, thus, appellants lacked standing to assert RICO claims.

Appellants also lacked standing because they failed to show any injury to "business or property." Damage to reputation is generally considered personal injury and thus is not an injury to "business or property" within the meaning of 18 U.S.C. § 1964(c). See, e.g., City of Chicago Heights v. Lobue, 914 F. Supp. 279, 285 (N.D. Ill. 1996) (damage to city's business reputation not injury to "business or property" compensable under § 1964(c)); In re Teledyne Defense Contracting Derivative Litigation, 849 F. Supp. 1369, 1372 n.1 (C.D. Cal. 1993) (noting injuries to "business reputation" are not cognizable under RICO).

Finally, appellants argue that the district court erred in dismissing for lack of standing their civil RICO conspiracy claim under 18 U.S.C. § 1962(d). Appellants argue that, unlike a substantive RICO claim under 18 U.S.C. § 1962(a), (b) or (c), in order to establish standing to bring a civil RICO conspiracy claim under § 1962(d), they need only allege that their injury was caused by any overt act in furtherance of the conspiracy and not a RICO predicate act. This argument was rejected in Bowman. While acknowledging the split among the circuits on this issue,[5] Bowman explained that "[i]mposing the predicate act requirement on civil claims based on violations of § 1962(d) narrows the focus of those suits to the specific racketeering activity that lies at the heart of the RICO statute." 985 F.2d at 388.

_____

[5]The split among the circuits on this issue may be resolved next Term. See Beck v. Prupis, 162 F.3d 1090 (11th Cir. 1998) (holding overt act must be predicate act), cert. granted, 119 S. Ct. 2046 (1999).

CONCLUSION

In sum, we hold that the district court did not err in converting RPR's Rule 12(b)(6) motion to dismiss into a motion for summary judgment and in denying appellants' motion to voluntarily dismiss the action without prejudice and in holding appellants lacked standing to assert civil RICO claims. Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

U.S. COURT OF APPEALS, EIGHTH CIRCUIT.