2001 OK CIV APP 65

Alice B. DAVIS, Plaintiff/Appellant,

v.

BOARD OF REGENTS FOR OKLA-HOMA STATE UNIVERSITY and the Agricultural and Mechanical Colleges, Langston University, Ernest L. Holloway, Gary C. Clark, John G. Polkinghorne, Isabel Keith Baker, Claud D. Evans, Dennis V. Howard, Edward F. Keller, and W. Douglas Wilson, Defendants/Appellees.

No. 93,878.

Court of Civil Appeals of Oklahoma, Division No. 1.

April 27, 2001.

Jack R. Green, Norman, OK, for Appellant.

James M. Robinson, Assistant Attorney General, Oklahoma City, OK, for Appellees.

JOPLIN, Judge:

¶ 1 Plaintiff/Appellant Alice B. Davis (Plaintiff) seeks review of the trial court's order granting the motion for summary judgment of the Defendants/Appellees Board of Regents for Oklahoma State University and the Agricultural and Mechanical Colleges, Langston University, the individual regents by name, and Ernest L. Holloway, president of Langston, (collectively Defendants or by name) in Plaintiff's action against Defendants to recover damages for retaliatory demotion, defamation, violation of due process, and interference with an economic relationship. Having reviewed the record, however, we conclude the order of the trial court should be affirmed.

¶ 2 In 1985, Plaintiff, then employed as Assistant to the Dean of Research and Extension Services Department of Langston University, discovered and reported alleged fiscal mismanagement of USDA funds by Holloway and a vice-president. According to Plaintiff, Holloway and the vice-president consequently pressured Plaintiff's supervisor—Dr. Simpson, Dean of the department—to remove Plaintiff from any accounting functions, and in 1987, essentially

divested Plaintiff of any power, control or authority over departmental funds.

¶ 3 In 1991, Plaintiff discovered travel claim irregularities by Holloway,[1] and reported the discovery to Dr. Simpson. Upon further alleged retaliatory conduct by Holloway and his vice-president, Plaintiff filed a grievance in August 1991. At a grievance hearing in September 1992, the grievance committee found in favor of Plaintiff, but Holloway, in his capacity as president, refused the committee's recommendations, and the Board of Regents refused to hear Plaintiff's further appeal. According to Plaintiff, Holloway continued to pressure Dr. Simpson to remove Plaintiff from all accounting duties or terminate Plaintiff's employment, but Dr. Simpson refused.

¶ 4 In 1996, Holloway informed Plaintiff and Dr. Simpson of an impending review of the department's fiscal affairs, and that "serious concerns" had arisen regarding Plaintiff's job performance. Both Dr. Simpson and Plaintiff were placed on administrative leave with pay, and an article soon appeared in the Black Chronicle newspaper stating Dr. Simpson and Plaintiff were being investigated for embezzlement.

¶ 5 Plaintiff submitted a grievance to the affirmative action officer without results. Holloway reassigned Plaintiff to a new job in an entirely different department, according to Plaintiff, a "make work" position. Plaintiff filed yet another grievance. After a hearing in 1998, the grievance committee again found for Plaintiff, but again, according to Plaintiff, Holloway refused the committee's recommendations.

¶ 6 Plaintiff then commenced the instant action, alleging retaliatory demotion in violation of public policy; defamation; tortious interference with an economic relationship; and deprivation of property without due process. After voluminous motions and briefs submitted by all parties, the trial court granted Defendants' motions for summary judgment in all respects. Plaintiff appeals, and the matter stands submitted for accelerated appellate review on the trial court record.[2]

---

1. I.e., duplicate travel claims submitted for state and federal reimbursement.

2. See, Rule 13(h), Rules for District Courts, 12 O.S. Supp.1993, Ch. 2, App., and Rule 1.36,

¶ 7 Plaintiff first specifically asserted that Defendants wrongfully transferred her to a "lesser" position in retaliation for her reports of Holloway's fiscal mismanagement, i.e., "whistle blowing," in violation of the public policy of this state. Indeed, the Oklahoma Supreme Court in 1987 acknowledged cases from other jurisdictions recognizing an actionable tort claim in favor of an employee *discharged* from the employment in retaliation for the employee's "expos[ure][of] some wrongdoing by the employer" as violative of public policy. *Hinson v. Cameron,* 1987 OK 49, ¶ 10, 742 P.2d at 553, fn. 11. Essential to a public policy tort discharge claim, however, is the actual termination of the employer-employee relationship. *Burk v. K–Mart,* 1989 OK 22, ¶ 17, 770 P.2d 24, 29–30.[3]

¶ 8 In the present case, Plaintiff was reassigned to a position for which she received the same pay, but which she believed did not utilize her education or experience. Plaintiff cites no authority, nor do we know of any, which recognizes a cause of action in Oklahoma for retaliatory lateral reassignment or demotion. Plaintiff's annual contract extension included a printed statement that Plaintiff agreed to "accept the work and perform the duties assigned by the administration realizing that changes in assignments may be made in the best interests of the university." Under these circumstances, we find no actionable public policy tort claim stated.

¶ 9 Plaintiff's secondly alleged she was defamed by the University when she was placed on administrative leave without cause, and by certain articles which appeared in the Black Chronicle. An action for defamation is governed by the one year statute of limitations pursuant to 12 O.S.1991 § 95 (Fourth). In the present case, Plaintiff was placed on leave in February 1997, the same month the alleged defamatory articles appeared in the Black Chronicle, but she did not initiate the present action until June 1998, well over a year later. Although Plaintiff claims she was "obstructed" from bringing the action earlier and/or that the defamation continued after February 1997, she offers no evidentiary support for this contention. Consequently, we find no actionable defamation claim.

¶ 10 Plaintiff's also alleged violation of her due process rights, particularly, that her forced seven month administrative leave and her subsequent reassignment deprived her of a protected liberty and/or property interest without a meaningful opportunity to be heard. The Oklahoma Constitution, Article II, § 7, accords Plaintiff the right to due process before being deprived of life, liberty, or property, and the liberty or property interest involved may include a person's good name, reputation, or integrity. *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). The due process required includes notice reasonably calculated to inform a party of *every* critical stage of an action so as to afford him the opportunity to *meet the issues* at a meaningful time and in a meaningful manner before a neutral decision-maker. *Towne v. Hubbard,* 2000 OK 30, 3 P.3d 154; *Shamblin v. Beasley,* 1998 OK 88, 967 P.2d 1200.

¶ 11 In the present case, Plaintiff averred that she was never questioned about or allowed input into the "investigation" of the Research and Extension department's fiscal matters, and that during her forced administrative leave, all communication between her and members of the Langston faculty was in fact proscribed. Plaintiff further averred she was never apprised of the specific reason for her forced administrative leave beyond generalized "serious concerns" regarding her job performance, and that upon returning to Langston, she was reassigned to a lesser job. The evidentiary materials reveal decisions in

Oklahoma Supreme Court Rules, 12 O.S. Supp. 1997, Ch. 15, App.

**3.** "We thus follow the modern trend and adopt today the public policy exception to the at-will termination rule in a narrow class of cases in which the *discharge* is contrary to a clear mandate of public policy as articulated by constitutional, statutory or decisional law. We recognize this new cause of action in tort. It is well settled in Oklahoma a tort may arise in the course of the performance of a contract and that tort may then be the basis for recovery even though it is the contract that creates the relationship between the parties. An employer's *termination* of an at-will employee in contravention of a clear mandate of public policy is a tortious breach of contractual obligations." (Footnotes omitted.) (Emphasis added.)

her favor in response to Plaintiff's grievances, but that Holloway, the primary individual against whom the grievances were directed, acted as final arbiter subject only to discretionary review by Board.

¶ 12 Plaintiff's argument is, however, fatally flawed. As Plaintiff filed suit against a political subdivision and the employees thereof, Plaintiff is bound by the provisions of the Oklahoma Governmental Tort Claims Act (OGTCA), 51 O.S.1991 § 151 et seq. The OGTCA not only provides immunity for the State but also provides very specific time periods in which a claim must be pursued. 51 O.S. §§ 156, 157. It is uncontroverted in the present case that Plaintiff did not comply with the notice provisions of the OGTCA. Absent evidence of some barrier which prevented Plaintiff from giving timely notice, this argument too must fail. Finding no such evidence, we reject this proposition.

¶ 13 Finally, Plaintiff asserts Defendants tortiously interfered with her economic relationship with Langston. We have previously acknowledged application of the OGTCA in this case, and that Plaintiff did not comply with the OGTCA's filing requirements. Nevertheless, the OGTCA does not shield State personnel from individual liability when they act with malice or in bad faith. *Carswell v. Oklahoma State University,* 1999 OK 102, 995 P.2d 1118.

¶ 14 In the present case, however, we find no evidence of any actionable interference with Plaintiff's economic relationship with Langston. That is to say, Plaintiff did not endure a decrease in salary and fails to demonstrate she was denied promotions, raises, grants, or the like sufficient to demonstrate an economic consequence. Absent some proof of causally-related economic damage, we find no such claim surviving Defendants' motion for summary judgment.

¶ 15 Where the evidentiary materials show "no substantial controversy as to any material fact and that one of the parties is entitled to judgment as a matter of law, the court shall render judgment to said party whether or not he is the moving party." Rule 13(e), Rules for District Courts of Oklahoma, 12 O.S., Ch. 2, App. As we have noted, we find

neither actionable claims stated, nor admissible evidence supporting any viable claims.

¶ 16 The order of the trial court granting the motion for summary judgment of Defendants is therefore AFFIRMED.

¶ 17 ADAMS, P.J., and JONES, J., concur.