**Christopher C. CLARK, Plaintiff,**

v.

**STIPE LAW FIRM, L.L.P., Gene Stipe, individually, G. Michael Blessington a.k.a. G. Michael Blessington PC, Defendants.**

**No. CIV–03–936–F.**

United States District Court,
W.D. Oklahoma.

April 20, 2004.

Murray E Abowitz, George W. Dahnke, Abowitz Timberlake & Dahnke PC, Oklahoma City, OK, for Stipe Law Firm LLP, Defendant.

Charles F Alden, III, Hudson Alden Leonard & Hanes, Oklahoma City, OK, for Gene Stipe, Defendant.

G Michael Blessington, Stipe Law Firm–OKC, Oklahoma City, OK, for G Michael Blessington, Defendant.

Andrew P Botti, Keith Michael McLean, Darrell Mook, Donovan Hatem LLP, Boston, MA, Amy J Pierce, Daniel G Webber, Jr, Ryan Whaley Hampton & Bomhoff, Oklahoma City, OK, for Christopher C Clark, Plaintiff.

### ORDER

FRIOT, District Judge.

Before the court are separate motions to dismiss Plaintiff's First Amended Complaint filed by Defendants Gene Stipe, G. Michael Blessington and the Stipe Law Firm, L.L.P.

This action was filed on July 10, 2003. The original complaint was met with motions to dismiss, which resulted in the filing of the first amended complaint on October 23, 2003. The legal sufficiency of the first amended complaint is now challenged by the defendants.

Plaintiff, Christopher C. Clark, is an individual who asserts that he is a citizen of the State of Maine. Mr. Clark states that, at all material times, he was the campaign treasurer for the Walt Roberts for Congress campaign. He also states that he was a client of the Stipe Law Firm, L.L.P. This is an action for legal malpractice, fraud, conspiracy and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1964, et seq. (RICO). As has been noted, this case now comes before the court on the defendants'

motions to dismiss the first amended complaint.

These motions test the sufficiency of the allegations in the first amended complaint under Rules 9(b) and 12(b)(6) Fed.R.Civ.P. When the allegations in a complaint are tested under Rule 12(b)(6), the court must take the well-pleaded allegations as true. Indeed, a complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *National Commodity and Barter Assoc. v. Archer,* 31 F.3d 1521, 1527 (10th Cir.1994). However, under Rule 9(b), not all averments are treated equally. Under Rule 9(b), with respect to averments of fraud, "the circumstances constituting fraud ... shall be stated with particularity." In a RICO case, Rule 9(b) is fully applicable to the plaintiff's allegations with respect to RICO predicate acts based on fraud. *Cayman Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1362 (10th Cir.1989). Even where the plaintiff has already had one opportunity to amend his complaint, the court, if it finds the plaintiff's allegations to be deficient under Rule 9(b), may permit further amendment or may, in its discretion, deny leave to further amend the complaint. *Id.* at 1362–63. Viewing the allegations in plaintiff's pleading through the lens of Rules 9(b) and 12(b)(6), the "allegations of the complaint must be taken at face value and construed most favorably to the pleader." *National Commodity and Barter Assoc. v. Archer,* at 1527.

As is discussed in more detail below, in order to state a RICO claim, plaintiff must sufficiently allege (i) conduct (ii) of an enterprise (iii) through a pattern (iv) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). This rule, as explicated by the lower courts, is easier to state than it is to apply. Each of the *Sedima* prerequisites has spawned its own substantial body of law under Rules 9(b), 12(b)(6) and 56, as well as in other procedural contexts.

The allegations in plaintiff's first amended complaint will not be repeated verbatim here. However, given the nature of the present motions which attack the sufficiency of the allegations in the first amended complaint, the essential allegations of that pleading should be understood.

Plaintiff's essential allegations, which at this point must be taken as true, are as follows:

In 1998, Walt Roberts ran for Congress in the Third Congressional District of Oklahoma. Mr. Clark was a successful businessman in the district. He was requested by then-State Senator Gene Stipe, a partner in the Stipe Law Firm, to become the treasurer of the Walt Roberts for Congress campaign.

As treasurer, Mr. Clark was required to keep records of contributions and submit periodic reports to the Federal Election Commission ("FEC") with respect to campaign receipts and disbursements. The periodic reports were required to contain, among other things, the identity of each contributor, the amount of the contribution and the date of the contribution. The Roberts campaign routinely used the Stipe Law Firm's office equipment and administrative personnel to conduct official campaign business. Unbeknownst to Mr. Clark, the defendants Gene Stipe (alleged to have been the *de facto* head of the Roberts campaign), the Stipe Law Firm and G. Michael Blessington contrived and repeatedly executed various schemes to funnel illegal monies from a variety of sources into the Roberts campaign. The schemes were designed to disguise the true source of the contributions so that

they could not be detected by Mr. Clark or the FEC or the public.

Trouble began, according to the first amended complaint, in August, 1998. In that month, a news article appeared in the *Tulsa World.* The article suggested that Mr. Stipe might have been the source of funds for $67,000 in campaign funding which had been claimed to be the proceeds of a cattle sale.

Mr. Clark inquired of Mr. Stipe about the report in the *Tulsa World.* Mr. Stipe assured Mr. Clark that the accusations were untrue, insisting that the story was politically motivated. Mr. Clark believed and relied upon Mr. Stipe's representations. After this episode, Mr. Stipe arranged for the Stipe Law Firm to represent Mr. Clark in all matters pertaining to Mr. Clark's role as campaign treasurer. During this time, Messrs. Stipe and Blessington, as well as others, were directly responsible for, or complicit in, the illegal campaign contributions.

At the same time that Mr. Stipe and the law firm were representing Mr. Clark in his capacity as campaign treasurer, those defendants and several law firm personnel routinely prepared campaign finance reports with respect to donations made to the Congressional campaign of Walt Roberts. Mr. Clark relied upon the Stipe Law Firm to insure that the form and content of the required FEC reports complied with all applicable requirements, including those governing federal limits on campaign contributions. In this respect, Mr. Clark asserts that he was counseled by attorneys at the Stipe Law Firm, and in good faith believed and relied upon their representations, that the periodic campaign finance reports which they had prepared accurately reflected the source of the funds, the identity of the contributors, and the amounts given by each contributor, as required by federal law.

Mr. Clark asserts that the campaign finance reports prepared by the Stipe Law Firm contained patently false information about the true source of the funds, the identity of the contributors, and the amounts given by individuals, all in violation of federal law. Mr. Clark alleges that the Stipe Law Firm knowingly mailed or wired dozens of false campaign finance reports for the Roberts campaign to the FEC and that these reports purported to be true, correct and complete reports of receipts and disbursements. The Stipe Law Firm caused these reports to be transmitted under the signature of Mr. Clark as campaign treasurer.

According to the first amended complaint, the situation deteriorated in October, 1998, when several members of Congress from Oklahoma filed a complaint with the FEC alleging that the Walt Roberts campaign had undertaken illegal financing activities. Mr. Clark asserts that the Stipe Law Firm and the other defendants failed to take steps necessary to respond appropriately on Mr. Clark's behalf to the resulting FEC inquiries. The consequence of this, says Mr. Clark, was that the FEC got the false but unmistakable impression that Mr. Clark was ignoring the federal investigators and that he had something to hide as to the campaign's funding and his official handling of campaign contributions. Mr. Clark also asserts that, despite his protestations to the contrary, his business associates were either informed falsely or otherwise came to believe that Mr. Clark was the source of the allegedly illegal campaign funding. At least one business associate refused to do business with one of Mr. Clark's companies because of the adverse publicity surrounding the illegal funding of the Roberts campaign.

As the FEC investigation unfolded, the FEC asserted that Mr. Stipe, and individu-

als associated with him, had conceived and implemented a scheme to funnel funds into the Roberts Congressional campaign. The FEC's general counsel asserted that in excess of $200,000 in illicit campaign contributions had been made by Mr. Stipe or individuals associated with him but had been falsely reported as originating from other sources. As a result of the implementation of the scheme which Mr. Clark asserts was conceived by Mr. Stipe and his associates, Mr. Clark was induced to render false reports to the FEC as to the identity of contributors, the dates of contributions and the amounts of contributions.

As the investigation progressed, the FEC elicited from Mr. Stipe sworn answers to questions propounded by the FEC investigators. Mr. Clark asserts that, in December, 1999, Mr. Stipe submitted to the FEC a written statement purporting to be true (but in fact false) to the effect that (i) aside from three personal contributions in the amount of $1,000, Mr. Stipe had provided no funds to the Walt Roberts 1998 Congressional campaign, (ii) the $67,500 which Gene Stipe provided to Roberts in August, 1998 was in fact to be used to purchase cattle, and (iii) Mr. Stipe and Mr. Roberts had signed an option contract in December, 1997. Mr. Clark asserts that, to his great detriment, he relied upon these statements and others as to the source of the questioned campaign contributions. Due to the defendants' misrepresentations and failure to protect Mr. Clark's interest, Mr. Clark was, in essence, made the financial scapegoat for what Mr. Clark asserts was a fraud-ridden and corrupt Congressional campaign. The foreseeable result of the defendants' wrongful and negligent conduct was severe and lasting damage to Mr. Clark's reputation, asserted to be a natural consequence of his association with the defendants, the campaign, and the negative publicity generated by their unlawful activities.

Mr. Clark further asserts that in early 2001, Mr. Stipe, Mr. Roberts and an employee of the Stipe Law Firm attended a meeting in which they conspired to coordinate false testimony to be given in FEC depositions concerning the illegal funding of the Roberts campaign. Mr. Clark contends that, at his FEC deposition, Mr. Stipe repeatedly gave false testimony, under oath, for the purpose of covering up the true sources of numerous illegal contributions made to the Roberts campaign. Mr. Clark asserts that as a result of the obstruction of the FEC investigation by the defendants, as well as their failure to adequately represent him during the investigation, the FEC and others concluded that Mr. Clark was a willing participant in the illegal funding activity surrounding the Roberts campaign.[1]

### Proximate Cause and "Injury to Business or Property"

In support of their motions directed to the first amended complaint, all of the defendants first assert that, given the particularity requirements of Rule 9(b), Fed. R.Civ.P., plaintiff has not alleged facts sufficient to confer standing to maintain a claim under 18 U.S.C. § 1964(c) because plaintiff has failed to allege an injury

---

1. This summary, based upon the allegations of the first amended complaint, also substantially tracks the summary set forth in plaintiff's consolidated response to the motions to dismiss the RICO counts, which consolidated response was filed on December 12, 2003. The summary set forth in that response fairly summarizes the essential allegations of the first amended complaint. It should be emphasized once again that whether or not expressly so stated, this summary of the essential allegations of the first amended complaint assumes the truth of those allegations as required by the rules which govern the court's consideration of the pending motions.

which can legally be said to have been proximately caused by a RICO violation. Defendants also contend that plaintiff has failed to allege an injury to his business or property. In this regard, defendants argue that the injury plaintiff complains of is not injury flowing naturally from the predicate acts or pattern of racketeering activity itself but rather injury flowing from the Federal Election Commission's investigation and discovery of the wrongful acts and public disclosure of the alleged FTC violations by the Roberts campaign. Defendants assert that such consequential indirect injury is insufficient as a matter of law to satisfy the proximate cause requirements of § 1964(c) where the racketeering activity was not directed at the plaintiff and the plaintiff's claimed injury is the result of public disclosure of the wrongful conduct rather than the conduct itself, citing *In re American Express Co. Shareholder Litigation*, 39 F.3d 395 (2nd Cir. 1994); *Abrahams v. Young and Rubicam, Inc.*, 79 F.3d 234 (2nd Cir.1996), *cert. denied*, 519 U.S. 816, 117 S.Ct. 66, 136 L.Ed.2d 27 (1996); and *Hamm v. Rhone–Poulenc Rorer Pharmaceuticals, Inc.*, 187 F.3d 941 (8th Cir.1999), *cert. denied*, 528 U.S. 1117, 120 S.Ct. 937, 145 L.Ed.2d 815 (2000). Plaintiff in response acknowledges that the RICO pattern or individual predicate acts must be the proximate cause of the plaintiff's injury but asserts that proximate cause is shown if the pattern or RICO acts "are a substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence," quoting *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23–24 (2nd Cir.1990). Plaintiff further asserts that, for standing purposes, he need not have been the immediate victim or target of RICO violations, citing *Khurana v. Innovative Health Care Systems, Inc.*, 130 F.3d 143, 147 and 151 (5th Cir.1997) and *Mid Atlantic Telecom, Inc. v. Long Distance Services, Inc.*,

18 F.3d 260, 262 (4th Cir.1994), *cert. denied* 513 U.S. 981, 115 S.Ct. 323, 130 L.Ed.2d 283 (1994). Plaintiff asserts that in this case his injuries did in fact "flow from the commission of the predicate act," *Sedima*, 473 U.S. at 497, 105 S.Ct. 3275, because plaintiff's professional reputation was foreseeably damaged as a result of defendants' predicate acts.

Defendants also argue that plaintiff has not alleged an injury to his "business or property" as is necessary to confer standing under § 1964(c). They note that the injuries for which plaintiff seeks damages are injury to his reputation and standing in the community and legal expenses incurred in preventing the FEC from charging him with violations of federal election laws. Defendants assert that injury to reputation, even to business reputation, is generally considered to be a personal injury rather than an injury to business or property, citing *Hamm*, and that legal expenses incurred to protect reputation don't qualify as injuries to business or property either, citing *Bast v. Cohen, Dunn and Sinclair, P.C.*, 59 F.3d 492 (4th Cir.1995) and *Oscar v. University of Students Coop. Association*, 965 F.2d 783 (9th Cir.1992), *cert. denied*, 506 U.S. 1020, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992). Plaintiff responds obliquely, implying that damage to his professional reputation is adequate and that, in any event, he has alleged that one customer has refused to continue to do business with him, resulting in financial loss. He further asserts that he has been compelled to spend considerable funds to hire attorneys to represent him in the FEC investigation and to avoid indictment, which allegations are adequate to show injury to business or property for purposes of Rule 8, Fed.R.Civ.P.

In reply, defendants point out that the *Khurana* decision, on which plaintiff relies, was vacated by the Supreme Court, *see*

*Teel v. Khurana,* 525 U.S. 979, 119 S.Ct. 442, 142 L.Ed.2d 397 (1998)[2] and assert that, in any event, that that case only addressed proximate cause, not whether damage to reputation constitutes a RICO injury. They further point out that plaintiff has misrepresented what he alleged— that an *associate* has refused to do business with one of plaintiff's companies, and that nowhere in the amended complaint has plaintiff alleged a financial loss resulting from this associate's decision.

### Injury to Business or Property

■ To establish standing under 18 U.S.C. § 1964(c), a plaintiff must show: (i) a violation of § 1962; (ii) an injury to his business or property; and (iii) that his injury was proximately caused by a RICO violation. *See Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) (proximate cause); *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (RICO plaintiff only has standing if "he has been injured in his business or property by the conduct constituting the violation"); *Deck v. Engineered Laminates,* 349 F.3d 1253, 1257 (10th Cir.2003); *Robbins v. Wilkie,* 300 F.3d 1208, 1210 (10th Cir.2002). The Supreme Court in *NOW v. Scheidler,* 510 U.S. 249, 256, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) stated, "We have held that at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allega-

tions embrace those specific facts that are necessary to support the claim." *Id.* (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Following that liberal standard adopted by the Supreme Court, the Tenth Circuit has held that a plaintiff need only "plead damages to business or property in a manner consistent with Rule 8 to show standing and is not required to plead with the particularity required by Rule 9(b)." *Robbins v. Wilkie,* 300 F.3d at 1211.

In his first amended complaint, plaintiff alleges, *inter alia,* as follows:

> As a direct and proximate cause of defendants' actions of mail fraud, wire fraud and obstruction, and their violations of 18 U.S.C. § 1962(c), Clark has been and continues to be injured in his business or property within the meaning of 18 U.S.C. § 1964(c) in an amount to be determined at trial. Such injuries include, but are not limited to, irreparable harm to his professional reputation, the cost and fees associated with avoiding indictment, and lost business and money.

First Amended Complaint at ¶ 105.

■ These allegations of injury to business and property are adequate under the above-cited authority for standing under RICO. Plaintiff makes specific reference to harm to his professional reputation and to out-of-pocket costs, including professional fees, incurred as a result of the defen-

---

**2.** By his failure to cite the direct history of the Fifth Circuit's *Khurana* decision, plaintiff implicitly overstates (if only slightly) its authoritative value. By their failure to mention that *Khurana* was vacated only because it was moot, defendants implicitly understate its persuasive value. As is cogently discussed by the District Court in *Alden v. Allied Adult & Child Clinic, L.L.C.,* 171 F.Supp.2d 647, 651 (E.D.La.2001), *Khurana* remains viable precedent on the issue of whether standing may be

established under § 1962 on the basis of damage to the RICO plaintiff's professional reputation as a result of the acts of the individuals whose fraudulent conduct besmirched his reputation. This remains so notwithstanding the vacatur for mootness and the Supreme Court's decision in *Beck v. Prupis,* 529 U.S. 494, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000), which resolved an unrelated issue contrary to the resolution of that issue by the Fifth Circuit in *Khurana.*

dants' alleged acts. Close parsing of the various species of damage asserted by plaintiff is not necessary at this point. It should be noted, however, that the authorities are not in unison as to whether injury or damage to reputation is to be considered a personal injury, not an injury to "business or property" conferring standing and compensable under RICO. Defendants cite *Hamm v. Rhone–Poulenc Rorer Pharmaceuticals, Inc.*, 187 F.3d 941, 954 (8th Cir.1999) *cert. denied*, 528 U.S. 1117, 120 S.Ct. 937, 145 L.Ed.2d 815 (2000). *Hamm* arguably supports defendants, but the issue as to reputational injury in that case was more one of causation than of compensability *vel non*. Also supportive of defendants' position is *Walker v. Gates*, 2002 WL 1065618 at *7 and n. 12 (C.D.Cal. 2002) (citing cases), but that case apparently did not involve a claim of damage to a *professional or business* reputation. On the other hand, the court in *Guerrero v. Gates*, 110 F.Supp.2d 1287, 1293 (C.D.Cal. 2000), assessing a RICO complaint that included allegations of injury to professional reputation, declined to dismiss the complaint. *See also, Sadighi v. Daghighfekr*, 36 F.Supp.2d 279, 290 (D.S.C.1999) (professional reputation) and *Wang Laboratories v. Burts*, 612 F.Supp. 441, 444 (D.Md. 1984) (business reputation).

■ The court looks to relevant state property law principles to determine whether an interest asserted by a RICO plaintiff to have been injured is "property" for RICO purposes. *Leach v. Federal Deposit Ins. Corp.*, 860 F.2d 1266, 1274 (5th Cir.1988), *cert. denied* 491 U.S. 905, 109 S.Ct. 3186, 105 L.Ed.2d 695 (1989). In

Oklahoma, a person's good name and reputation may well be a species of property, at least for some purposes. *Davis v. Bd. of Regents, Okla. State Univ.*, 25 P.3d 308, 310 (Okla.Civ.App.2001).[3] Although, at least as a beginning point, the court is loath to foreclose reliance on professional reputation as a compensable species of "property" for RICO purposes, there is simply no need to reach any final conclusion on that issue at this point in the litigation. The other alleged damages are sufficient for now.

*Causation*

■ To have standing, a RICO plaintiff must also show that the injury to his business or property was proximately caused by the RICO violation. *See* 18 U.S.C. § 1964(c); *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). Thus, a RICO plaintiff must show "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* at 268, 112 S.Ct. 1311. The injurious conduct which must be the proximate cause of the injury may be either the pattern of racketeering activity violation of § 1962 or the individual RICO predicate acts. *See Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2nd Cir.1990).

■ What the court looks for at this point is allegations establishing, if true, "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes*, at 268, 112 S.Ct. 1311. On the issue of causation, plaintiff emphasizes his allegations to the effect that Mr.

---

**3.** Plaintiff states that Article II, § 7 of the Oklahoma Constitution "recognizes that a property interest includes 'a person's good name, reputation or integrity.' " Plaintiff's consolidated response, at 10, n. 2. The cited constitutional provision does not, in terms, say that. The Oklahoma Court of Civil Appeals, citing *federal* precedent (*Wisconsin v.*

*Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971)), did endorse this concept in *Davis*, but, contrary to the clear implication of the cited passage in plaintiff's brief, the terms of the constitutional provision include no such elaboration on the concept of "property."

Stipe and the Stipe Law Firm prepared and caused to be mailed and transferred by wire numerous fraudulent campaign contribution reports which Mr. Clark was required to approve. These fraudulent predicate acts provided the foundation for the next round of predicate acts, which consisted of the obstruction of the FEC investigation, which is alleged with reasonable specificity to have directly implicated the plaintiff, besmirched his professional reputation, cost him the business of at least one customer, and caused him to spend a substantial amount of money to hire attorneys to represent him in the FEC investigation and to avoid indictment. Applying the controlling standards as discussed above, the court concludes that plaintiff has pled causation sufficiently to confer RICO standing.

### Pattern of Racketeering Activity

■ The first amended complaint clears the "pattern of racketeering activity" hurdle with noticeably greater ease than it clears the other RICO pleading requirements. The Supreme Court has taken pains to give meaning to the statutory requirement that there be a "pattern" of racketeering activity. There must be "continuity" in the sense that a RICO plaintiff cannot rely upon isolated acts. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). The acts which are to be evaluated for their continuity must also bear some relationship one to another. *Id.* at 242, 109 S.Ct. 2893.

■ In the case at bar, the allegations of the first amended complaint, if true, tell a compelling story about a scheme executed over a substantial period of time by means of the interrelated and fraudulent predicate acts of Mr. Stipe and his associates. At least as pled by the plaintiff, each succeeding chapter in the execution of the fraudulent scheme, starting with the un-

derlying violations, and followed by the fraudulent reporting and the obstruction of the ensuing investigation, naturally flowed from the preceding chapters to lead to the ultimate dénouement, besmirching plaintiff's personal and professional reputation, with resultant adverse financial consequences. The court concludes that plaintiff has adequately alleged a "pattern"—a sufficient number of racketeering acts which are related one to the other and which occurred over a sufficiently long period of time to satisfy the requirements of closed-ended continuity.

### Diversity Jurisdiction

In light of the court's conclusions as to the RICO claims, the issues as to the existence of diversity of citizenship jurisdiction are moot. *See* 28 U.S.C. § 1367(a) (supplemental jurisdiction).

### Conclusion

The pending motions, specifically, the motion by defendant Stipe Law Firm, L.L.P. to dismiss amended complaint (docket entry no. 37), the motion of defendant G. Michael Blessington to dismiss plaintiff's amended complaint (docket entry no. 38), and the motion of defendant Gene Stipe to dismiss the amended complaint (docket entry no. 39) are **DENIED**. The defendants shall file and serve their answers within 10 days after the date of this order.