# United States Court of Appeals
## For the Eighth Circuit

_____

Nos. 21-3259/21-3825
_____

C.H. Robinson Worldwide, Inc.

*Plaintiff - Appellant*

v.

Traffic Tech, Inc.; James Antobenedetto; Spencer Buckley;
Wade Dossey; Brian Peacock; Dario Aguiniga

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: October 20, 2022
Filed: February 24, 2023

_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

Employees at C.H. Robinson Worldwide, Inc. jumped ship to join Traffic Tech, Inc. C.H. Robinson then sued five of those former employees and Traffic Tech, raising various state-law claims, including tortious interference with a contractual relationship. After the case was removed to federal court, the district court granted summary judgment in favor of the former employees and Traffic Tech.

The district court also awarded attorney fees to the former employees and Traffic Tech. We affirm in part, reverse in part, vacate the attorney fees award, and remand.

## I. Background

C.H. Robinson and Traffic Tech are both in the logistics business. C.H. Robinson is a Delaware corporation with its principal place of business in Minnesota. Traffic Tech is a Canadian corporation with its United States headquarters in Illinois.

Five of C.H. Robinson's employees left and began working for Traffic Tech: James Antobenedetto, Spencer Buckley, Wade Dossey, Dario Aguiniga, and Brian Peacock. C.H. Robinson believes all five of these former employees improperly solicited current C.H. Robinson employees and customers, as well as accessed or used its confidential or proprietary information—all for the benefit of Traffic Tech.

The current dispute focuses largely on two clauses in the former employees' employment contracts with C.H. Robinson. The first is the Confidentiality and Protection of Business Agreement, which states:

> For a period of two (2) years after the termination of my employment with [C.H. Robinson], however occasioned and for whatever reason, I will not: . . . Directly or indirectly, for the benefit of any Competing Business . . . solicit, engage, sell or render services to, or do business with any Business Partner or prospective Business Partner of [C.H. Robinson] with whom I worked or had regular contact, on whose account I worked, or with respect to which I had access to Confidential Information about such Business Partner at any time during the last two years of my employment with [C.H. Robinson]; or . . . Directly or indirectly cause or attempt to cause any Business Partner of [C.H. Robinson] with whom [C.H. Robinson] has done business or sought to do business within the last two (2) years of my employment to divert, terminate, limit or in any manner modify, decrease or fail to enter into any actual or potential business relationship with [C.H. Robinson].

-2-

All five former employees had agreed to this language.

The second clause is a choice-of-law provision. All of the former employees except Peacock agreed that Minnesota law "shall govern as to the interpretation and enforceability of this Agreement without regard to conflicts of law principles." Peacock's contract, by comparison, states:

> With respect to claims or disputes arising in California, I agree that the law of the State of California shall govern as to the interpretation and enforceability of this Agreement without regard to conflicts of law principles. With respect to all other claims or disputes, I agree that the law of the State of Minnesota shall govern as to the interpretation and enforceability of this Agreement without regard to conflicts of law principles.

Also relevant are the Bonus Incentive Agreements signed by Antobenedetto, Buckley, Dossey, and Aguiniga. In exchange for continuing their employment and agreeing to certain dispute resolution provisions, they became eligible for a bonus. The signed "[a]greement[s] supersede[d] all previous Incentive Bonus Agreements or similar agreements entered into" with C.H. Robinson. Antobenedetto, Buckley, Dossey, and Aguiniga also "reaffirm[ed] and agree[d] anew to abide by all [their] prior agreements with [C.H. Robinson] as a necessary condition of receiving the benefits under this Agreement."

C.H. Robinson originally filed this lawsuit in Minnesota state court before the case was removed to federal court on the basis of diversity jurisdiction. *See* 28 U.S.C. §§ 1332, 1441. C.H. Robinson asserted three claims: breach of contract against the former employees; tortious interference with a contractual relationship against the former employees and Traffic Tech; and tortious interference with prospective economic advantage against the former employees and Traffic Tech.

The former employees and Traffic Tech filed a motion for summary judgment. In support, they cited California's anti-waiver statute, which became effective on January 1, 2017, and states:

> (a) An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following:
>
>> (1) Require the employee to adjudicate outside of California a claim arising in California.
>>
>> (2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California.
>
> (b) Any provision of a contract that violates subdivision (a) is voidable by the employee, and if a provision is rendered void at the request of the employee, the matter shall be adjudicated in California and California law shall govern the dispute.

Cal. Lab. Code § 925(a)–(b). Of the five former employees, only Peacock began working for Traffic Tech and signed his employment contract after California's anti-waiver statute took effect.

The district court granted summary judgment in favor of the former employees and Traffic Tech. In doing so, the district court construed *Modern Computer Systems, Inc. v. Modern Banking Systems, Inc.*, 871 F.2d 734 (8th Cir. 1989) (en banc), as providing a threshold test for determining "whether to enforce a choice of law provision over an anti-waiver statute . . . ." It then concluded California's anti-waiver statute applies, the contracts were amended by the Bonus Incentive Agreements, the contracts are voidable, and the former employees voided the contracts. Next, the district court held the breach of contract and tortious interference with a contractual relationship claims failed because the contracts were unenforceable under California law. The district court concluded the claim for tortious interference with prospective economic advantage lacked merit because C.H. Robinson did not provide evidence of interference. In a separate order, the

-4-

district court awarded $247,416 in attorney fees and costs to the former employees and Traffic Tech.  C.H. Robinson timely appealed.

## II.  Analysis

C.H. Robinson argues the district court erred by granting summary judgment in favor of its former employees and Traffic Tech.  "We review the district court's grant of summary judgment de novo, taking the facts in the light most favorable to the nonmoving party."  *McElree v. City of Cedar Rapids*, 983 F.3d 1009, 1014 (8th Cir. 2020) (quoting *Oglesby v. Lesan*, 929 F.3d 526, 531–32 (8th Cir. 2019)).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

### A.  Choice of Law

The district court conducted a choice-of-law analysis and held California law applies.  C.H. Robinson insists the district court applied the wrong choice-of-law test.  We review a choice-of-law determination de novo.  *Axline v. 3M Co.*, 8 F.4th 667, 672 (8th Cir. 2021).

"According to long-settled precedent, a federal court sitting in diversity borrows the forum State's choice-of-law rule."  *Cassirer v. Thyssen-Bornemisza Collection Found.*, 142 S. Ct. 1502, 1509 (2022) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  The forum State in this diversity case is Minnesota.  We therefore apply Minnesota's choice-of-law rules.  *Allianz Ins. Co. of Can. v. Sanftleben*, 454 F.3d 853, 855 (8th Cir. 2006).

Minnesota is "committed to the rule" that parties can agree on the law that governs their contract.  *Milliken & Co. v. Eagle Packaging Co.*, 295 N.W.2d 377, 380 n.1 (Minn. 1980) (quoting *Combined Ins. Co. of Am. v. Bode*, 77 N.W.2d 533, 536 (Minn. 1956)).  Accordingly, "under Minnesota law a contractual choice-of-law

provision will govern so long as the parties acted in good faith and without an intent to evade the law." *St. Jude Med. S.C., Inc. v. Biosense Webster, Inc.*, 818 F.3d 785, 788 (8th Cir. 2016) (cleaned up) (quoting *Medtronic, Inc. v. Gibbons*, 684 F.2d 565, 568 (8th Cir. 1982)); *see also Placzek v. Mayo Clinic*, 18 F.4th 1010, 1016 (8th Cir. 2021) (applying Minnesota law "because of the employment agreement's choice-of-law provision"). Here, the choice-of-law provisions in the contracts of Antobenedetto, Buckley, Dossey, and Aguiniga provide Minnesota law governs. Further, the former employees and Traffic Tech do not raise arguments about good faith and intent to evade the law. Minnesota law therefore applies.

The former employees and Traffic Tech disagree, urging us to apply our en banc decision in *Modern Computer* the same way it was understood by the district court. We do not agree with the district court's characterization of *Modern Computer* as establishing a threshold test for determining whether to enforce a choice-of-law provision over another State's anti-waiver statute. *See Mod. Comput.*, 871 F.2d at 738–39. Instead, *Modern Computer* merely applied Nebraska's choice-of-law rules because Nebraska was the forum State. *See Mod. Comput. Sys., Inc. v. Mod. Banking Sys., Inc.*, 858 F.2d 1339, 1341–42 (8th Cir. 1988) (outlining the relevant procedural history before the case was considered en banc). Thus, our en banc decision in *Modern Computer* did not change our approach of first examining the forum State's rules before deciding whether to enforce a choice-of-law provision. Here, Minnesota is the forum State, so we apply Minnesota's choice-of-law rules. *See Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4 (1975) ("A federal court in a diversity case is not free to engraft onto those state rules exceptions or modifications which may commend themselves to the federal court, but which have not commended themselves to the State in which the federal court sits.").

Peacock signed an employment contract that warrants a different analysis. Peacock and C.H. Robinson agreed as follows:

> With respect to claims or disputes arising in California, I agree that the
> law of the State of California shall govern as to the interpretation and

enforceability of this Agreement without regard to conflicts of law principles. With respect to all other claims or disputes, I agree that the law of the State of Minnesota shall govern as to the interpretation and enforceability of this Agreement without regard to conflicts of law principles.

C.H. Robinson argues the claims or disputes involving Peacock arose in Minnesota. Peacock does not analyze the contractual language on appeal.

The parties' arguments on appeal raise more questions than answers. To understand why, we briefly discuss choice-of-law principles. Broadly, choice of law asks "which jurisdiction's law should apply in a given case." *Choice of Law*, Black's Law Dictionary (11th ed. 2019). Relatedly, there is a conflict of laws when there is "[a] difference between the laws of different states . . . in a case in which a transaction or occurrence central to the case has a connection to two or more jurisdictions." *Conflict of Laws*, Black's Law Dictionary (11th ed. 2019). Resolving disputes about what law applies often includes a fact-intensive analysis of a variety of factors. *See, e.g.*, *Hime v. State Farm Fire & Cas. Co.*, 284 N.W.2d 829, 831–34 (Minn. 1979). It is no wonder why we have long cautioned against courts "entangling" themselves "in messy issues of conflict of laws" unless "there actually is a difference between the relevant laws of the different states."[1] *Phillips v. Marist Soc. of Wash. Province*, 80 F.3d 274, 276 (8th Cir. 1996) (quoting *Barron v. Ford Motor Co. of Can.*, 965 F.2d 195, 197 (7th Cir. 1992)); *see also Nodak Mut. Ins. Co. v. Am. Fam. Mut. Ins.*

---

[1]The parties appear to agree there is an outcome-determinative conflict between Minnesota and California law. "Minnesota law disfavors noncompete agreements," but "the courts will enforce them under certain circumstances." *Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 454 (Minn. Ct. App. 2001) (citing *Nat'l Recruiters, Inc. v. Cashman*, 323 N.W.2d 736, 740 (Minn. 1982)). For example, "restrictive covenants are enforced to the extent reasonably necessary to protect legitimate business interests," such as "the company's goodwill, trade secrets, and confidential information." *Id.* at 456. California law, by contrast, prohibits "restraining a party from engaging in a profession or business unless necessary to protect trade secrets." *Id.* (citing Cal. Bus. & Prof. Code § 16600); *see also Edwards v. Arthur Andersen LLP*, 189 P.3d 285, 290–93 (Cal. 2008).

*Co.*, 604 N.W.2d 91, 93–94 (Minn. 2000) ("Before a choice-of-law analysis can be applied, a court must determine that a conflict exists between the laws of two forums." (footnote omitted)).

To avoid some of these issues, parties to a contract regularly agree to a choice-of-law provision that selects the applicable law before any controversy arises. *See generally* Restatement (Second) of Conflict of Laws § 187 (1971). Peacock's contract includes a choice-of-law provision of sorts. The contract first asks whether the "claims or disputes aris[e] in California . . . ." If the answer is yes, California law applies. If the answer is no, Minnesota law applies. Unlike a normal choice-of-law provision that selects the law at the outset, this provision asks a threshold question about where the particular claims or disputes arose.[2]

The district court held C.H. Robinson's claims arose in California. But its conclusion was premised on the assumption that California law—and, by extension, California Labor Code § 925—applies. This assumption was an error because Minnesota law governs four of the former employees' contracts and, as we explain, the issue of whether California law governs Peacock's contract is undecided. On appeal, the parties do not clearly articulate their positions on whether Minnesota or California law applies to determine what the parties intended by the phrase "claims or disputes arising in California." Given the questions left unanswered by the district court and the parties, we remand for the district court to consider in the first instance whether C.H. Robinson's claims or disputes against Peacock arose in California under the language in Peacock's employment contract.

In sum, we hold that Minnesota law applies to the interpretation and enforceability of Antobenedetto, Buckley, Dossey, and Aguiniga's employment

---

[2]This purported choice-of-law clause resembles dépeçage—i.e., the conflict of laws doctrine applying the law of different states to resolve different issues in the same case. *See generally Ewing v. St. Louis-Clayton Orthopedic Grp., Inc.*, 790 F.2d 682, 686–87 (8th Cir. 1986); *Dépeçage*, Black's Law Dictionary (11th ed. 2019).

contracts. We remand for the district court to consider whether C.H. Robinson's claims or disputes against Peacock arose in California or elsewhere under Peacock's employment contract. We further remand for the district court to substantively analyze whether all or part of the former employees' contracts are unenforceable and, if not, whether the claims for breach of contract and tortious interference with a contractual relationship survive summary judgment.

## B. Tortious Interference with Prospective Economic Advantage

Unlike the other two claims, C.H. Robinson's claim for tortious interference with prospective economic advantage is not contingent upon whether the contracts are enforceable. Rather, this claim is based upon C.H. Robinson's long-standing relationships with its customers. The district court dismissed the claim because C.H. Robinson did not provide evidence that its former employees and Traffic Tech interfered with C.H. Robinson's existing relationships. On appeal, C.H. Robinson argues the district court erred by ignoring that the contracts were voidable rather than void.

A district court's interpretation of state law while sitting in diversity is reviewed de novo. *Sports v. Top Rank, Inc.*, 954 F.3d 1142, 1146 (8th Cir. 2020). A claim for tortious interference with prospective economic advantage under Minnesota law has five elements:

1) The existence of a reasonable expectation of economic advantage;
2) Defendant's knowledge of that expectation of economic advantage;
3) That defendant intentionally interfered with plaintiff's reasonable expectation of economic advantage, and the intentional interference is either independently tortious or in violation of a state or federal statute or regulation;
4) That in the absence of the wrongful act of defendant, it is reasonably probable that plaintiff would have realized his economic advantage or benefit; and

-9-

5)      That plaintiff sustained damages.

*Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.*, 844 N.W.2d 210, 219 (Minn. 2014).

To raise a genuine issue of material fact in response to a motion for summary judgment, a nonmovant "must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor." *Segal v. Metro. Council*, 29 F.4th 399, 403 (8th Cir. 2022) (quoting *Argenyi v. Creighton Univ.*, 703 F.3d 441, 446 (8th Cir. 2013)).  C.H. Robinson's sole argument on appeal for this claim does not address the lack of evidence—the basis of the district court's decision. Accordingly, we cannot conclude the district court erred by dismissing the claim. *Cf. Sherr v. HealthEast Care Sys.*, 999 F.3d 589, 601–02 (8th Cir. 2021).  We thus affirm the district court's dismissal of the claim for tortious interference with prospective economic advantage.

## C.  Attorney Fees and Costs

The district court awarded the former employees and Traffic Tech attorney fees under California Civil Code § 1717(a).  C.H. Robinson argues this award was improper because, among other reasons, California law does not apply.  "We review legal issues relating to fee awards de novo, the awards themselves for abuse of discretion." *Cody v. Hillard*, 304 F.3d 767, 772 (8th Cir. 2002).  Attorney fees are premature in light of the issues that will remain following remand. *See In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060, 1068 (8th Cir. 2015); *Martinez v. City of St. Louis*, 539 F.3d 857, 862 (8th Cir. 2008).  Indeed, the former employees and Traffic Tech argue that whichever state's law governs the contracts also governs the fees provision.  We thus vacate the order awarding attorney fees and costs.

### III. Conclusion

We affirm the district court's dismissal of C.H. Robinson's claim for tortious interference with prospective economic advantage, reverse the judgment in all other respects, vacate the district court's order awarding attorney fees and costs, and remand for further proceedings consistent with this opinion.

_____