# United States Court of Appeals
## For the Eighth Circuit
_____

No. 24-3069
_____

C.H. Robinson Worldwide, Inc.

*Plaintiff - Appellant*

v.

Traffic Tech, Inc.; James Antobenedetto; Spencer Buckley; Wade Dossey; Brian
Peacock; Dario Aguiniga

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: May 15, 2025
Filed: December 12, 2025
_____

Before BENTON, GRASZ, and STRAS, Circuit Judges.
_____

GRASZ, Circuit Judge.

C.H. Robinson Worldwide, Inc., sued five of its former employees who had
gone to work for Traffic Tech, Inc., claiming they each breached the restrictive
covenants in their employment agreements. C.H. Robinson also sued the former
employees and Traffic Tech for tortious interference with a contractual relationship.

On appeal for the second time, C.H. Robinson argues the district court[1] erred when it granted summary judgment for Traffic Tech and the former employees, denied C.H. Robinson's motion for summary judgment, and denied C.H. Robinson's motion to voluntarily dismiss with prejudice its claim against one of the employees and a related claim against Traffic Tech. We affirm.

## I. Background

Both C.H. Robinson and Traffic Tech are in the logistics business. James Antobenedetto, Spencer Buckley, Wade Dossey, Dario Aguíñiga (collectively, Employees), and Brian Peacock, the individual appellees here, were previously employed by C.H. Robinson and then left to eventually work for Traffic Tech.

C.H. Robinson asserts that, as a condition of employment, each Employee executed a Confidentiality and Protection of Business Agreement (CPB Agreement) with customer non-solicitation and business interfering clauses.[2] The CPB Agreement for each Employee contains within § IV(C), the following Restrictive Covenants:

> C. For a period of two (2) years after the termination of my employment with the Company . . ., I will not:
>
> 1. Directly or indirectly . . . solicit, engage, sell or render services to, or do business with any Business Partner or prospective Business Partner of the Company with whom I worked or had regular contact, on whose account I worked, or with respect to which I had access to Confidential Information about such Business Partner at any time during the last two years of my employment with the Company; or

---

[1]The Honorable Katherine M. Menendez, United States District Judge for the District of Minnesota.

[2]Peacock also executed an employment agreement that contained slightly different language from the others, but it is not at issue in this appeal.

. . . .

3. Directly or indirectly cause or attempt to cause any Business Partner of the Company with whom the Company has done business or sought to do business within the last two (2) years of my employment to divert, terminate, limit, or in any manner modify, decrease or fail to enter into any actual or potential business relationship with the Company.

The CPB Agreement further defines the following terms:

- "The Company": C.H. Robinson "and all existing or future affiliated corporations including all subsidiaries, divisions and enterprises owned or controlled by those corporations."
- "Business Partner": "any Customer, Carrier, consultant, supplier, vendor, or any other person, company, organization, or entity that has conducted business with or potentially could conduct business with the Company in any of the Company Businesses."
- "Company Businesses": "freight brokerage and contracting, contract logistics, freight forwarding or backhauling, transportation logistics, transportation-related payment and information systems, custom house brokerage businesses, the purchase, sale and sourcing of fresh fruits and vegetables, and other businesses the Company may become involved in now or in the future during Employee's employment with Company."
- "Confidential Information": "all information written . . . or oral . . ., which is disclosed to Employee [or] to which Employee was given access . . . which is not generally known," and "all information contained on any computer or computer system of Company."
- "Customer": "any person, company or organization that has engaged or potentially could engage with Company's services in any of the Company Businesses."

The CPB Agreement also includes a Severability Covenant, which states:

The covenants contained in this Agreement are intended to be separate and divisible covenants, and if, for any reason, any one or more thereof shall be held to be invalid or unenforceable, in whole or in part, it is agreed that the same shall not be held to affect the validity or

enforceability of any other covenant or part of this Agreement. To the extent any of the terms or time periods set forth in Part IV are determined by a Court of competent jurisdiction to exceed the restrictions permitted by law, then any such term or time period shall be equitably modified to the extent necessary to comply with the applicable law, but the parties understand and agree that they intend such terms to be enforced to the maximum permitted by the law.

The district court initially granted summary judgment in favor of Traffic Tech and the Employees, determining that the CPB Agreements were unenforceable under California law. Thus, the district court reasoned, C.H. Robinson could not prevail on its breach of contract claims against the Employees or its tortious interference with a contract claim against Traffic Tech.[3] However, in the first appeal, we reversed, holding that Minnesota law governed the CPB Agreements for all Employees besides Peacock, and remanding for the district court to decide whether "the claims or disputes against Peacock arose in California or elsewhere under Peacock's employment contract" and "to substantively analyze whether all or part of the former employees' contracts are unenforceable, and, if not, whether the claims for breach of contract and tortious interference with a contractual relationship survive summary judgment." *C.H. Robinson Worldwide, Inc. v. Traffic Tech, Inc.*, 60 F.4th 1144, 1150 (8th Cir. 2023).

On remand, C.H. Robinson moved to voluntarily dismiss with prejudice its claim against Peacock and its related claim against Traffic Tech. On the same day, C.H. Robinson also filed a motion for summary judgment as to its other claims. Traffic Tech and the Employees renewed their motion for summary judgment. Peacock opposed the motion for voluntary dismissal. The district court, applying Minnesota law to the CPB Agreements, granted summary judgment for the Employees and Traffic Tech. It held the Restrictive Covenants were unenforceable

---

[3]The district court also awarded summary judgment to Traffic Tech on C.H. Robinson's claim of tortious interference with prospective economic advantage. In the first appeal, we affirmed the district court's dismissal of this claim and it is not at issue in this appeal.

against Antobenedetto, Buckley, Dossey, and Aguíñiga under Minnesota law and, for purposes of Peacock, was void under California law. It also determined the Restrictive Covenants were overbroad and declined to sever or modify under the blue-pencil doctrine the unenforceable portions of §§ IV(C)(1) and IV(C)(3). Because it held the Restrictive Covenants were unenforceable, it also granted summary judgment for Traffic Tech on the tortious interference with a contract claim. Further, the district court denied C.H. Robinson's motion for voluntary dismissal and granted summary judgment for Peacock, noting "the table [was] set for summary judgment" and it was clear that Peacock should win on the merits.

C.H. Robinson appeals the denial of its motion for summary judgment and the grant of summary judgment in favor of Traffic Tech and the Employees, arguing the district court was required to sever the Restrictive Covenants pursuant to the Severability Clause and that § IV(C)(1) of the Restrictive Covenants is then enforceable under Minnesota law after being severed. C.H. Robinson also appeals the district court's denial of its motion for voluntary dismissal of its claims against Peacock and related claim against Traffic Tech.

## II. Analysis

### a. Enforceability of the Restrictive Covenants

C.H. Robinson's argument that the district court erred in awarding summary judgment to the Employees depends on its first contention that the district court should have severed §§ IV(C)(1) and IV(C)(3) from each other and then determined that § IV(C)(1) is enforceable and was breached by the Employees. But we need not decide this issue because, even when viewed in isolation as C.H. Robinson requests,[4] § IV(C)(1) is overly broad and thus unenforceable against Employees.

---

[4]C.H. Robinson conceded at oral argument that they are only seeking to enforce § IV(C)(1) in its entirety, and it is not arguing that the district court is required to sever parts of § IV(C)(1) that it deems unenforceable.

We review de novo a grant of summary judgment. *C.H. Robinson*, 60 F.4th at 1148. The CPB Agreements for Antobenedetto, Buckley, Dossey, and Aguíñiga are governed by Minnesota law. *See id.* "In applying state law, we are bound to apply the law of the state as articulated by the state's highest court." *Travelers Prop. Cas. Ins. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburg*, 621 F.3d 697, 707 (8th Cir. 2010). "When the state's highest court has not spoken, our job is to predict how the state's high court would resolve the issue." *Id.* "We may look to decisions of the state's intermediate courts to the extent they contain sound reasoning, and such decisions may often serve as 'the best evidence' of how the highest court would rule." *Id.*

Minnesota strictly construes restrictive covenants. *Medtronic, Inc. v. Gibbons*, 684 F.2d 565, 568 (8th Cir. 1982). In other words, Minnesota law generally disfavors restrictive covenants such as non-solicitation agreements. *See Bennett*, 134 N.W.2d at 899. Minnesota law applies the same legal test to both non-solicitation agreements and other restrictive covenant agreements. *See, e.g., Webb Pub. Co. v. Fosshage*, 426 N.W.2d 445, 450 (Minn. Ct. App. 1988). "The test applied is whether or not the restraint is necessary for the protection of the business or good will of the employer, and if so, whether the stipulation has imposed upon the employee any greater restraint than is reasonably necessary to protect the employer's business, regard being had to the nature and character of the employment, the time for which the restriction is imposed, and the territorial extent of the locality to which the prohibition extends." *Bennett v. Storz Broad. Co.*, 134 N.W.2d 892, 899 (Minn. 1965). "[T]he court must consider . . . all the circumstances of the case, including the situation of the parties, the necessity of the restriction for the protection of the employer's business, and the right of the employee to work and to earn a livelihood and better his status . . . ." *Id.* at 900.

A non-solicitation covenant is reasonable to prevent "the deflection of trade or customers by the employee by means of the opportunity which the employment has given him." *Fosshage*, 426 N.W.2d at 450 (quoting *Bennett*, 134 N.W.2d at 898). Minnesota law suggests a non-solicitation covenant is reasonable to prevent a

former employee's solicitation of customers that the employee "had access to information on . . . which would aid him in soliciting their business" and customers who "[we]re the responsibility of [the former employee] without overlap." *See id.*

Applying Minnesota's test, § IV(C)(1) of the Restrictive Covenants is overbroad under Minnesota law. The covenant went beyond actively soliciting customers and extended to various forms of "direct[] or indirect[]" contact with Business Partners, including "solicit[ing], engag[ing], sell[ing], [] render[ing] services to, or do[ing] business with any Business Partner or prospective Business Partner . . . with whom [the Employee] had regular contact . . . or with respect to which [the Employee] had access to Confidential Information about such Business Partner . . . ." The CPB Agreement's definition of a Business Partner includes not only active customers that worked with the Employee, but "Carrier, consultant, contractor, supplier, vendor, or any other person, company, organization, or entity that has conducted business or potentially could conduct business with the Company." The language of § IV(C)(1) is so broad that, at its ends, it could be enforced against an Employee who "engage[s]" with "anyone" that "potentially could conduct business with" C.H. Robinson. As a result, § IV(C)(1) goes beyond what is reasonably necessary to protect C.H. Robinson's business and is thus unenforceable. *See Bennett*, 134 N.W.2d at 899.

Further, while the duration of § IV(C)(1)'s restrictions is not by itself unreasonable, *see Overholt Crop Ins. Serv. Co. v. Bredeson*, 437 N.W.2d 698, 703–04 (Minn. App. 1989), the unlimited geographic scope of § IV(C)(1) is problematic. Indeed, there is no geographical limit set forth in the CPB Agreement, meaning the "territorial extent" of these provisions appears to be unlimited. *See Bennett*, 134 N.W.2d at 899. While a restrictive covenant with unlimited geographic scope is not per-se unreasonable, *see Prow v. Medtronic, Inc.*, 770 F.2d 117, 119, 121 (8th Cir. 1985) (holding that a 360-day-long restrictive covenant that only prohibited solicitation of customers that the employee had himself contacted within his last year of employment was a reasonable restriction), here it would essentially bar an Employee from practicing within the transportation logistics industry at all. As

explained above, § IV(C)(1) goes beyond restricting solicitation of active customers that the Employees worked with and applies to any person or entity that had conducted or *potentially could* conduct business with C.H. Robinson, as a customer or otherwise. Section IV(C)(1) thus exceeds the protections that are reasonably necessary to protect C.H. Robinson's business. *See Bennett*, 134 N.W.2d at 899.

Because § IV(C)(1) of the Restrictive Covenants goes outside the bounds of the non-solicitation covenants that Minnesota courts have upheld, we conclude it is unenforceable against the Employees.[5] And since the Restrictive Covenants are unenforceable against the Employees, there is no contract to form the basis for a tortious interference claim against Traffic Tech. *See Qwest Commc'ns Co., LLC v. Free Conferencing Corp.*, 905 F.3d 1068, 1073 (8th Cir. 2018). We thus affirm the district court's grant of summary judgment.

### b. Denial of Motion to Voluntarily Dismiss Claims with Prejudice

C.H. Robinson next argues the district court abused its discretion when it denied C.H. Robinson's motion to voluntarily dismiss with prejudice its claims against Peacock and its related claim against Traffic Tech. "We review a district court's decision of whether 'to allow a plaintiff to dismiss a case voluntarily' for abuse of discretion." *Morrow v. United States*, 47 F.4th 700, 703 (8th Cir. 2022) (quoting *Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 763 (8th Cir. 2001)).

Under the Federal Rules of Civil Procedure, a "plaintiff may dismiss an action without court order" at any time "before the opposing party serves either an answer or a motion for summary judgment," or when all other parties stipulate to the dismissal. Fed. R. Civ. P. 41(a)(1). "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the

---

[5]Because we conclude the Restrictive Covenants are unenforceably broad, we decline to discuss the Employees' alternative argument that there was no adequate consideration to create an enforceable contract.

court considers proper[.]" *Id.* at (a)(2). "When deciding whether to allow voluntary dismissal, the court should consider 'whether the party has presented a proper explanation for its desire to dismiss; whether a dismissal would result in a waste of judicial time and effort; and whether a dismissal will prejudice the defendant.'" *Graham v. Mentor Worldwide LLC*, 998 F.3d 800, 804–05 (8th Cir. 2021) (quoting *Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 950 (8th Cir. 1999)). "Likewise, a party is not permitted to dismiss merely to escape an adverse decision nor to seek a more favorable forum." *Id.* at 805 (quoting *Hamm*, 187 F.3d at 950).

Considering these factors, we conclude the district court did not abuse its discretion when it denied C.H. Robinson's motion for voluntary dismissal. We first consider whether granting the motion would result in a waste of judicial time and effort. C.H. Robinson brought this claim in 2019 and had been actively litigating it through one round of summary judgment and on appeal before filing its motion to voluntarily dismiss the claims. Before filing its motion to dismiss, C.H. Robinson had been pursuing the claim for nearly five years. The district court had already granted summary judgment for Peacock and based on our opinion from the first appeal, it was clear that Peacock would prevail if his CPB Agreement was governed by California law. As the district court found, "nothing ha[d] developed factually about the case against" Peacock since the initial grant of summary judgment and our remand to determine which State's law applied, and it had in fact "been plain from the outset of this litigation" that California law controlled this claim. Given this extended litigation and time it had already spent, the district court did not abuse its discretion by concluding it would waste judicial resources to grant the dismissal motion rather than resolve the summary judgment motion.

Finally, we consider C.H. Robinson's explanation for filing the motion. C.H. Robinson expresses that it wanted to dismiss the case to avoid any liability under an amendment to a California statute that was passed after this litigation commenced that makes it unlawful for an employer to seek "enforcement" of any customer non-solicitation agreement that violates California law. *See* Cal. Bus. and Prof. Code § 16600.5. The statute allows for an "employee, former employee, or prospective

employee [to] bring a private action . . . for injunctive relief or the recovery of actual damages, or both" for any attempt by an employer to enforce a non-compete agreement. *Id.* § 16600.5(e)(1). California law has long provided under the same statute that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." *Id.* § 16600(a) (subject to exceptions within the chapter). And C.H. Robinson would have already known it was at risk for paying attorney fees to Peacock under different California statutes when they filed the suit. *See* Cal. Civ. Code § 1717(a) (providing in an action arising under a contract with attorney fee-shifting provisions that any prevailing party in the action "shall be entitled to reasonable attorney[] fees"); Cal. Labor Code § 925 (a)(2) and (c) (providing that "a court may award" attorney fees to an employee who successfully resists the enforcement of an employment contract purporting to "[d]eprive the employee of the substantive protection of California law with respect to a controversy arising in California"). Specifically, the prejudice would come from the lack of a ruling potentially allowing Peacock to seek attorney fees under California law. *See* Cal. Civ. Code § 1717(a), (b)(2) (stating that if "an action has been voluntarily dismissed," then there is "no prevailing party" who can recover "attorney's fees and costs"). It would also have made it harder for him to prove a claim under Section 16600.5(e) for damages. *See* Cal. Bus. And Prof. Code § 16600(a). Because granting the motion when a decision on the merits was imminent would be a waste of judicial resources and because Peacock would be prejudiced, we conclude the district court did not abuse its discretion by denying C.H. Robinson's motion for voluntary dismissal with prejudice of its claims against Peacock. *See Graham*, 998 F.3d at 804–05; *SnugglyCat, Inc. v. Opfer Commc'ns, Inc.*, 953 F.3d 522, 528 (8th Cir. 2020).

### III. Conclusion

For the foregoing reasons, we affirm the district court's grant of summary judgment as to all claims, denial of C.H. Robinson's motion for summary judgment, and denial of C.H. Robinson's motion for voluntary dismissal.

_____